IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA  )
           )
v          )  Civ. Case No. 2:03cv243-T
           )
FRED C. SCOTT     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This matter is before the court on the defendant's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255.  On April 13, 2001, Fred C. Scott ("Scott") was convicted of one count of conspiracy to distribute a controlled substance, a violation of 21 U.S.C. § 846, and one count of use of a communications device to facilitate a drug crime, a violation of 21 U.S.C. § 843(b).   On July 12, 2001, he was sentenced to 420 months' imprisonment on the conspiracy count and 96 months' imprisonment on the communications count.

Scott appealed, raising the following issues:

  1. Whether there was a material variance between
    the indictment and the proof?

  2. Whether the evidence was sufficient to sustain a
    conviction?

(Doc. No. 19, Appellant's Brief at p.1.)  On August 14, 2002, the Eleventh Circuit affirmed Scott's convictions.  *U.S. v. Scott*, 46 Fed.Appx. 618 (11th Cir. 2002) (Table).

On February 27, 2003, Scott filed his motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 on the basis of the following claims:

1. The prosecutor committed misconduct when he knowingly allowed a material witness to testify falsely and by failing to correct the false testimony.

2. He received the ineffective assistance of trial counsel for the following reasons:

   a. Trial counsel failed to conduct any pretrial discovery or investigation, failed to file a timely motion to suppress, and failed to object to evidence.

   b. Trial counsel failed to require the prosecutor, through discovery, to tender tape recordings to the defense prior to trial.

   c. Trial counsel failed to review and listen to the tape recorded conversations with movant prior to trial.

   d. Trial counsel failed to cross-examine Nancy Washington regarding the voices on the tape recordings and impeach her with exculpatory evidence.

   e. Trial counsel failed to cross-examine Nancy Washington regarding the cocaine seized from her residence.

   f. Trial counsel failed to object to the Court's participation in the prosecution.

g.     Trial counsel failed to call available witnesses.

h.     Trial counsel failed to request a jury instruction on multiple conspiracies.

I.     Trial counsel failed to advise movant regarding his right to testify.

j.     Trial counsel failed to inform him of a plea offer and failed to advise him of the consequences of proceeding to trial or entering a plea.

k.     Trial counsel failed to object to the statutory penalties.

l.     Trial counsel failed to object to the base offense level and sentencing guideline range on the grounds that the federal sentencing guidelines were incorrectly applied.

m.     Trial counsel failed to subject the prosecution's case to a meaningful adversarial testing process and counsel's cumulative errors denied Scott a fair trial.

3.     He received the ineffective assistance of appellate counsel for the following reasons:

a.     Appellate counsel did not raise a claim that the prosecutor failed to disclose tape recorded conversations.

3

b.      Appellate counsel failed to raise a claim that the court participated in the prosecution of the movant.

c.      Appellate counsel failed to familiarize herself with *Edwards* and *Riley* and argue that the statutory maximum was 40 years of imprisonment.

(Doc. No. 2.)

The Government responded to Scott's motion, asserting that any claims raised in the defendants' § 2255 motions which were not raised on direct appeal are procedurally defaulted.  (Doc. No. 20.)  In addition, the Government argues that Scott's ineffective assistance of counsel claims are without merit.  (*Id.*)  Scott was afforded an opportunity to respond to the Government's submissions, and did so.  (Doc. Nos. 24 & 25.)  After due consideration and upon review of the motion and numerous pleadings filed in this case, the court determined that an evidentiary hearing was required on three limited issues. That hearing was held on May 30, 2006.  For the reasons that follow, the court concludes that Scott's motion should be denied.

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

### 1.     General Principles

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both

4

prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *U.S. v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697.

*See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 2.    Ineffective Assistance of Trial Counsel

#### a.    The Tape Recordings

Part of the government's case against Scott was premised on tape recordings of phone conversations allegedly between Scott and co-conspirators. Scott asserts that trial counsel's failure to obtain and listen to those tape recordings with him prior to trial prejudiced his case. He contends that a review of the tapes indicates that Nancy Washington's testimony identifying his voice on the recordings is false and that trial counsel should have objected to the introduction of the tapes on this basis. He also asserts that the Government knowingly allowed Washington to give this false testimony at trial.

It is well-settled law that the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the 'rudimentary demands of

justice.'"*Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S.

103, 112 (1935)); *DeMarco v. U.S.*, 928 F.2d 1074, 1076 (11th Cir. 1991). However, only

the knowing use of perjured testimony constitutes a due process violation. *U.S. v. Lopez*, 985

F.2d 520, 524 (11th Cir. 1993). "In connection with the general claim that the prosecution

colluded with the witness to commit perjury . . . the burden is on the [defendants] to allege

and prove, not conclusions, but facts which would entitle [them] to relief." *Smith v. U.S.*,

252 F.2d 369, 371 (5th Cir. 1958).[1]

In his response, Scott alleges that he, his wife, and his daughter determined that the

voice on the tape recording belonged to another person, Caston Osmond. In addition, he

argues that the prosecution should have known that Washington's testimony identifying him

was false because the Government was investigating Washington and Osmond for

committing various drug crimes. However, Scott has failed to submit any evidence to

support his conclusory allegation that Washington's testimony was false or that the

Government had knowledge of its falsity. *Cf. U.S. v. Lopez*, 985 F.2d at 524 (holding that

knowledge of the falsity of testimony is not imputed to the government when a key witness'

testimony is in conflict with another's statement). Scott has provided nothing more than his

own speculative conclusions to support his allegation that Washington's testimony was false

and that the Government had knowledge of its falsity. Consequently, Scott has failed to

show that the Government engaged in the deliberate deception of the court and jurors by the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

presentation of known false evidence.

Moreover, trial counsel reviewed the transcripts of the tape recordings with Scott before trial.[2]  (Doc. No. 25 at p. 1.)  In addition, the record clearly demonstrates that trial counsel challenged the introduction of the tape recordings on the grounds that Scott's voice was not on the tapes. (Volume IV, p. 138-39.)   Trial counsel also cross-examined Washington concerning her identification of Scott's voice,  (*Id*., at p. 159-65.), and at one point, Washington admitted that she was not "absolutely positively sure" that Scott's voice was on at least one of the tape recordings.[3]  (*Id*., at 164.)   Furthermore, during closing arguments, trial counsel pointed to weaknesses in Washington's testimony and argued that her identification of Scott's voice was unreliable.  (R. 157.)  For these reasons, the court concludes that Scott has failed to show that trial counsel's failure to obtain or listen to the tape recordings with him before trial fell below an objective standard of reasonableness or in any way prejudiced his case.  *Strickland, supra.*  Given trial counsel's assault on Washington's credibility and his cross-examination of her leading to her concession of uncertainty, there is no reasonable probability that the results of the trial would have been different.

---

[2] During the May 30, 2006, evidentiary hearing, counsel testified that he provided Scott all of the transcripts at issue prior to trial.

[3] During cross-examination Washington hesitated when asked if she was certain the voice she heard on the tapes was Scott's voice. (R. 162)  This led to her listening to the first tape which was the tape about which she was uncertain.  (R. 163-164) After hearing it again, she remained uncertain.  *Id*.

### b.  Pretrial Investigation

Scott contends that trial counsel's failure to conduct a pretrial investigation and file a motion to suppress prejudiced his case.  Specifically, Scott asserts that counsel should have challenged the introduction of cocaine hydrochloride, firearms, ammunition, and other items seized from a residence in Montgomery, Alabama.

In his affidavit, trial counsel maintains that he did not file a motion to suppress evidence because Scott lacked standing to bring a claim of unreasonable search and seizure of the items seized from the Montgomery residence.  "In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place to be searched, and that his expectation is reasonable."  *Minnesota v. Carter*, 525 U.S. 83 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).  The pleadings demonstrate that Scott resided in New Orleans, Louisiana, at the time of the search and seizure of the items.  (Doc. No. 3 at p.2.)  Thus, Scott did not have a reasonable expectation of privacy in the Montgomery residence.  Consequently, Scott has failed to demonstrate that counsel's failure to file a motion to suppress these items seized from the Montgomery residence prejudiced his case.  *Strickland*, *supra* at 694 (Petitioner suffers no prejudice from his counsel's failure to raise an issue because even if the claim had been raised, it would not have entitled petitioner to relief.)

### c.   The Cross-Examination of Washington

Scott asserts that trial counsel failed to cross-examine Washington regarding Caston's

voice and the cocaine found in her residence.  In his affidavit, counsel maintained that he did not ask Washington whether she believed the voice could have been Caston because there was no indication that she believed the individual on the tape was anyone other than Scott. (Doc. No. 16 at p.3.)  Counsel explained that questioning Scott about Caston would have been a "shot in the dark."  (*Id*.)  Thus, it is clear that Scott could have faced more damaging testimony if counsel had conducted further cross-examination regarding the voice on the tape.  The court therefore concludes that trial counsel's decision to limit the scope of cross-examination was a matter of sound trial strategy.  *See Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689.

Scott's argument that counsel should have cross-examined Washington regarding the cocaine in her residence is similarly unavailing.  According to counsel, he did not question Washington about the cocaine because she testified during direct examination that the source of the cocaine was John Riley.  (Doc. No. 16 at p. 3.)  The record clearly demonstrates that Washington testified on direct that Riley kept drugs and money in her house and that three kilograms of cocaine were found in her residence during the execution of a search warrant. (Vol. 4, R. 122-23, 126.)  There is no reasonable probability that counsel's pursuit of these lines of inquiry with Washington would have changed the outcome of the trial.  Thus, Scott has failed to demonstrate that trial counsel's failure to cross-examination Washington concerning the cocaine prejudiced his case.  *Strickland, supra.*

11

### d.    The Trial Court

Scott asserts that trial counsel failed to object to the trial judge's participation in his prosecution.  Specifically, Scott contends that the court's request to the prosecution that a witness testify regarding the conversion of pounds to kilograms was a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because "the government, not the judge, must prove drug quantity beyond a reasonable doubt."  (Doc. No. 2 at p. 34.)  The trial court's request that a witness simply convert pounds to kilograms for the jury's benefit is not a violation of Scott's constitutional rights.  *Cf. U.S. v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) (indicating that the court may use the Measurement Conversion Table in U.S.S.G. § 2D1.1, comment (n.10), when converting pounds to kilograms);  *U.S. v. Robinson*, 390 F.3d 853, 877 n.35 (6th Cir. 2004) (noting that the court may take judicial notice of the appropriate multipliers for converting between pounds, grams, and kilograms); *U.S. v. Escobar*, 106 Fed.Appx. 446 (6th Cir. 2004) (indicating that a trial judge may convert pounds to kilograms by using the Measurement Conversion Table located in U.S.S.G. § 2D1.1, comment (n.10)).  Consequently, Scott has failed to show that trial counsel's failure to object to the court's request that a witness do simple mathematics for the jury prejudiced his case. *See Strickland*, *supra*.

Scott also asserts that trial counsel failed to object to the trial court's comment that the voices on the tapes sounded the same.  Specifically, Scott contends that the judge's comment caused Washington to continue to give false testimony that his voice was on all of

12

the tape recordings.  The record demonstrates that, shortly after Washington testified that

Scott's voice was on the tapes, the following exchange occurred outside the presence of the

jury:

| | |
|---|---|
| Mr. Blanchard: | Having now heard the tapes, it's clear to me at least that the voice identified as Scott on the two tapes and the voice identified as Scott on the other two tapes are not the same voice.  Therefore, logically, at least if that is true, at least two of the identifications are mistaken. . . . |
| The Court: | First of all, to be honest with you I wasn't listening for that difference.  Why don't you play the tapes now and let's see if we can tell the difference. |
| . . . | |
| The Court: | I'm ready.  But the witness should listen, too.   This is perhaps something more important for the witness than for me, but I'd like to hear it as well obviously. . . . |
| . . . | |
| The Court: | Okay, I've heard enough.  The only difference I hear is he sounds a little bit down and out on the second tape.  I think the voice is much the same. |
| Mr. Blanchard: | Judge, I believe – |
| The Court: | Actually, I take that back.  I think |

|  | they are sufficiently close enough for – so the witness should be the one whom you should be examining about this. Would you like to take her on the tapes? She's the one – you know, I've only heard his voice during the trial. |
|---|---|
| Mr. Blanchard: | Yes, sir. |
| The Court: | If you would like to examine the witness about the voice, I think that's a better way of doing it. But if you want my view, I think they're sufficient enough to at least examine the witness about it and perhaps go to the jury. |

(Vol. 4, R. 138-41.)

Scott's assertion that the judge's comment influenced Washington's testimony is based on mere speculation. Additionally, Scott has failed to show that Washington would have testified differently in the absence of the judge's comment. Moreover, the record demonstrates that, even after the trial judge's isolated remark that the voices sounded similar, Washington testified during cross-examination that she was not certain that Scott's voice was on one of the tape recordings. (Vol. 4, R. 164.) This court therefore concludes that Scott has failed to show that counsel's failure to object to the trial judge's comment fell below an objective standard of reasonableness and prejudiced his case.

### e.    The Jury Instructions

Scott asserts that trial counsel failed to request a charge on multiple conspiracies. The

14

record clearly demonstrates that trial counsel requested a multiple conspiracy charge, but that the trial court refused this request. *See U.S. v. Scott*, Cr. No. 00-120-N, Doc. No. 42 (Jury Charge No. 16). Thus, Scott's non-meritorious contention fails to establish that his trial counsel's performance fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

### f.    Statutory Penalties

Scott alleges that trial counsel failed to object to the statutory penalties. Specifically, he contends that trial counsel should have argued that he should be sentenced to no more than 40 years of imprisonment because *Edwards v. U.S.*, 523 U.S. 511 (1998), and *U.S. v. Riley*, 142 F.3d 1254 (11th Cir. 1998), establish that the statutory maximum penalty should be based on the drug with the lowest punishable range.

Scott's situation is distinguishable from the facts in *Edwards* and *Riley*. Scott was convicted of conspiring to distribute marijuana *and* cocaine. In both cases cited by Scott, the defendants were convicted of conspiracy to distribute cocaine *or* cocaine base and the sentencing judge imposed sentences based on his finding that the defendant's illegal conduct had involved both cocaine and crack. In *Edwards*, the Court held that a sentencing judge is not limited to considering the offense of conviction and may sentence for both offense conduct and any other relevant conduct. 523 U.S. at 513. The Court also held that, if the amount of one substance involved leads to a lower statutory maximum sentence than would apply to the amount of the other substance, then the sentencing court must stay below the

15

lower statutory maximum.  Id. at 514.  The Court concluded that the district court was authorized to determine for sentencing purposes whether crack, as well as cocaine, was involved in the offense-related activities.  *Id*.  In *Riley*, the Eleventh Circuit, citing *Edwards*, concluded that the defendants generously exceeded the amounts required to make them eligible for life sentences, regardless of whether they were sentenced solely for crack or solely for powder.  142 F.3d at 1256.  Thus, Scott's reliance on *Edwards* and *Riley* for the proposition that trial counsel should have objected to the base offense level and sentencing guideline range in his case is misplaced.  Consequently, Scott has failed to demonstrate that counsel's failure to object to the statutory penalties on this basis prejudiced his case.  *See Strickland*, *supra*.

### g.    Issues Presented at the Evidentiary Hearing

#### 1.    *The Witnesses' Credibility*

During the hearing, Scott and his trial counsel, Bill Blanchard, testified concerning Scott's claims that counsel was ineffective for failing to advise him of his right to testify, inform him that the Government offered a plea agreement, or call witnesses on his behalf. As might be expected, their testimony about these issues cannot be reconciled.  Scott's credibility is central to the resolution of his claims because, if the court credits his testimony, he would be entitled to relief.  If the court credits his counsel's testimony, Scott will receive no relief on these claims.  After careful consideration, the court concludes that Scott's testimony is not worthy of belief.

16

In making its credibility determination, the court recognizes, of course, that it is improper to determine credibility based on the "status" of a witness. *U.S. v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Scott's status as a convicted felon nor his counsel's status as a lawyer is determinative. Rather, the court must weigh the testimony of these two witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand. *Gallego v. U.S.*, 174 F.3d 1196, 1998 (11th Cir. 1999).

Trial counsel was appointed by the court to represent Scott at trial. Consequently, counsel had no direct pecuniary interest in the outcome of this case. Counsel has no interest in the outcome of this case which undercuts his credibility.

Scott, on the other hand, obviously has a strong interest in the outcome of this case. At the time of his sentencing he was 51 years old, and he received a 35 year sentence on the conspiracy count. Scott's obvious interest in a favorable outcome in this proceeding militates against his credibility.

After careful consideration of the demeanor of Scott, his criminal history,[4] and the other *Gallego* factors as set out above, the court concludes that Scott's testimony regarding any failure of his counsel to allow him to exercise his right to testify, inform him of an offer to negotiate a plea, or refuse to allow him to call witnesses is not worthy of belief.

---

[4] The presentence report indicates that Scott had prior convictions for conspiracy to possess with intent to distribute marijuana, distribution of cocaine, and armed robbery. He had other minor convictions. Given his obvious familiarity with the criminal justice system, the court finds incredible his testimony that he did not understand that he had the right to testify at trial.

### 2.      *The Right to Testify*

Scott contends that trial counsel failed to inform him of his right to testify.  (Doc. No. 2 at pp. 38-40.)  Specifically, he alleges that defense counsel, Bill Blanchard ("Blanchard"), told him that he could not testify because of his criminal record.  (Doc. No. 25 at p. 2.)  In addition, he alleges that, although he informed defense counsel of his desire to testify, Blanchard refused to call him as a witness.  (*Id.*)

> A claim of ineffective assistance of counsel is the proper framework to analyze defendant's allegation that his attorney has violated his right to testify.  *See U.S. v. Teague,* 953 F.2d 1525, 1534 (11th Cir. 1992) (*en banc*).  A criminal defendant has a "fundamental constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."  *Teague,* 953 F.2d at 1532.  Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone, defense counsel "has not acted 'within the range of competence demanded of attorney's in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel."  *Teague,* 953 F.2d at 1534 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

*Gallego v. U.S.*, 174 F.3d at 1197.

At the evidentiary hearing, Scott testified that trial counsel did not advise him of his right to testify.  He also stated that counsel advised him that he should testify.  Scott explained that, even though he discussed testifying with counsel, he did not understand that he could exercise his right to testify at trial.  He stated that, upon hearing the audio-tapes played at trial, he recognized the voices on the tapes and informed counsel of his wish to

18

testify regarding the identification of the individuals on the recordings.

Trial counsel testified that he normally advises his clients of their right to testify prior to trial and that he assumes he did so in Scott's case.  He stated that he has no recollection of Scott indicating a desire to testify during trial; however, counsel also stated that, if Scott did inform him of a wish to take the stand, he would have advised him that testifying was not in his best interest because his criminal record would be admitted into evidence, which would effectively "group" Scott with the other conspirators who testified against him at trial.[5]

First, the court finds that Scott and defense counsel discussed whether Scott should testify.  *See U.S. v. Camacho*, 40 F.3d 349, 355 (11th Cir. 1994).  Second, the court finds that counsel advised Scott not to testify because it was not in his best interest to testify.  *See Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992).  Third, the court finds that counsel did not threaten to withdraw from representation to induce Scott not to testify.  *Id*.  *See also, Camacho*, 40 F.3d at 355.  Fourth, the court finds that Scott made the decision to accept the advice of his counsel about not testifying and did not testify for that reason.  Finally, as previously discussed, the court has carefully considered the demeanor of Scott during his testimony and does not credit Scott's testimony that he insisted on testifying at his trial.  Based on these findings, it is not necessary for the court to consider whether Scott's counsel's actions regarding his testifying were ineffective.  Scott is entitled to no relief on this claim.

_____

[5] Trial counsel explained that Scott, as well as the other conspirators, had lengthy criminal records.

### 3.      *The Plea Agreement*

Scott asserts that trial counsel failed to inform him of a plea offer and failed to advise

him of the consequences of proceeding to trial or entering a plea.  One of the basic duties of

criminal defense counsel is "to consult with the defendant on important decisions and to keep

the defendant informed of important developments in the course of the prosecution."

*Strickland*, 466 U.S. at 688.  Thus, it is clear that where the Government has offered a plea

agreement, trial counsel's failure to inform his client about the prosecution's offer constitutes

ineffective assistance of counsel.  *Diaz v. U.S.*, 930 F.2d 832, 834 (11th Cir. 1991).

At the hearing, Scott testified that trial counsel did not discuss a plea agreement and

that he was unaware that the Government had offered a lesser sentence in return for a plea

of guilty.  During cross-examination, Scott acknowledged that he stated at sentencing, "I told

my lawyer I had no reason to 'cop out.'"[6] Scott explained that this comment was in reference

to his initial meeting with counsel, when he and counsel discussed whether he should "go to

trial or 'cop out.'"

Trial counsel testified that, throughout his representation of Scott, Scott insisted that

he did not wish to plead guilty.  Counsel stated that, despite Scott's wish to proceed to trial,

he asked the United States Attorney whether the Government would be interested in a plea

agreement in a hypothetical situation such as in Scott's case.  According to trial counsel, the

prosecutor informed him that "the Government might be receptive to a plea bargain which

---

[6]Druing sentencing Scott testified, "I had an opportunity before Counsel advised by if I wanted to
cop out or something.  Yes, I have been throught the penal system and everything."  (R. 57).

could involve fifteen years." Trial counsel testified that, although no formal plea offer was made, he informed Scott of the Government's "hypothetical" offer and that Scott refused to consider the offer. According to trial counsel, Scott had strong religious beliefs and indicated that he "did not care to 'cop out' because God was going to take care of him."

The court finds that Scott's testimony that trial counsel never informed him about a possible plea offer or discussed the consequences of entering a plea is not credible, especially in light of the inconsistencies explained above between his testimony at sentencing and during the evidentiary hearing concerning his desire not to "cop out." Moreover, there is no evidence that a formal plea offer was made by the Government. The court also finds that trial counsel's testimony that he communicated the "hypothetical" plea offer to Scott and that Scott refused to "cop out" is credible. Therefore Court concludes that Scott was informed of, and rejected, the Government's "hypothetical" offer. Consequently, Scott is not entitled to relief with respect to his claim that trial counsel was ineffective for failing to advise him concerning a possible plea agreement.

### 4.    *The Available Witnesses*

Scott contends that trial counsel should have called witnesses to testify that his voice was not the voice on the tape recordings. Scott contends that his wife and daughter would have testified that Caston and Riley were the persons speaking on the recordings. In his affidavit, trial counsel asserted that Scott rejected the option of calling his family members as witnesses. (Doc. No. 16 at p.3.)

21

During the evidentiary hearing, Scott testified that, although he told trial counsel to call his wife and daughter as witnesses, counsel refused to do so because he "didn't like to ask a question if he didn't know what the answer would be."  In addition, Scott submitted an affidavit from his wife, stating that she told trial counsel during a recess in the criminal trial that she could identify the voices on at least two of the tape recordings.  Trial counsel testified that, prior to trial, he and Mrs. Scott may have discussed whether she should testify regarding general matters, but that they did not discuss whether she should testify about a specific defense. He also stated that Scott rejected his suggestion of calling his family members as witnesses.  Additionally, Scott testified that he had no recollection of Scott's wife or daughter informing him during trial that they could identify the voices on the tapes. He indicated that, if Scott had requested that his family members testify regarding the tape recordings, he would have called Scott's wife and daughter to the stand.

In this case, the Government presented credible evidence that Scott refused trial counsel's suggestion to call his family members as witnesses prior to trial.  Scott's decision in this regard restricted counsel's responsibility.  *Cf. Mitchell v. Kemp*, 7762 F.2d 886 (11th Cir. 1985) (A capital defendant's stated desire not to use character witnesses and refusal to testify limits the scope of counsel's required investigation). In addition, the court finds that neither Scott nor any of his family members informed trial counsel that they were interested in testifying regarding the voices on the tape recordings during a break in the trial. Consequently, this court finds that trial counsel's decision to abide by his client's wishes to

22

forgo calling his family members as witnesses did not fall below an objective standard of reasonableness.  Thus, Scott is entitled to no relief with respect to this claim.

### 3.     Ineffective Assistance of Appellate Counsel

Scott contends that appellate counsel was ineffective for failing to raise claims that the prosecution failed to disclose the tape recordings before trial, that the trial court participated in the prosecution, and that the sentencing court erred in determining the statutory maximum penalty.

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel.  *See Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).   Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *U.S. v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance").

As previously discussed, Scott's claims of ineffective assistance of trial counsel and the substantive claims subsumed within the ineffectiveness claims, including his contentions concerning the trial judge's comments and the statutory maximum penalty, are without merit. Thus, Scott has failed to show that appellate counsel's performance was deficient and that he suffered prejudice as a result of the omission of the aforementioned claims on direct appeal.  *See Strickland, supra.*

Scott has also failed to show that appellate counsel was ineffective for failing to raise a claim that the prosecution failed to disclose the tape recordings in a timely manner. As previously discussed, the evidence clearly demonstrates that Scott was provided transcripts of the tape recordings before trial. In addition, Scott has failed to point to any evidence indicating that Washington's testimony concerning the identification of Scott's voice on the tape recordings was false or that the Government was aware of its falsity. Consequently, Scott has failed to demonstrate that he suffered prejudice as a result of the late receipt of the tape recordings. The court therefore concludes that Scott's claim that appellate counsel was ineffective for failing to raise a claim that the prosecution failed to disclose the tape recordings does not satisfy the *Strickland* standard.

Based on the foregoing, the court concludes that the defendant's § 2255 motion with respect to his claims of ineffective assistance of trial and appellate counsel are due to be denied.

### 4.    The Cumulative Effect Claim

Scott argues that even if no single claim of ineffective assistance of counsel was so prejudicial as to amount a deprivation of due process, the cumulative effect produced a fundamentally unfair trial. This claim lacks merit for two reasons. First, the court has found no merit to Scott's claims of ineffective assistance of counsel. Consequently, there can be no adverse cumulative effect. Secondly, to the extent that Scott's claims implicate *United States v. Cronic*, 466 U.S. 648 (1984), he likewise is entitled to no relief. In *Cronic*, the

Court found that there are circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case in unjustified."  466 U.S. at 658.  In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*.  *Cronic*, 466 U.S. at 659.  An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir. 2002).

The record demonstrates that the defendant was represented by counsel at every critical stage of his trial and that meaningful adversarial testing of the Government's case took place at trial and on appeal.  Thus, for the reasons as stated, the court concludes that Scott is not entitled to any relief on any of his cumulative effect claims premised upon a claim of ineffective assistance of counsel.

### B.  Procedural Default

Scott's contention that the prosecution knowingly allowed a witness to give false testimony concerning the identification of Scott's voice on a tape recording is procedurally defaulted because Scott failed to raise this claim on direct appeal.  *U.S. v. Frady*, 456 U.S. 152 (1982); *Murray v. Carrier*, 477 U.S. 478 (1986); *Hill v. Jones,* 81 F.3d 1015 (11th Cir. 1996).

A movant may avoid the procedural bar by demonstrating "cause and actual prejudice

or actual innocence." *Jones v. U. S.*, 153 F.3d 1305, 1307 (11th Cir. 1998).  Scott asserts that he satisfies the cause and prejudice standard because trial counsel failed to preserve his substantive claim and appellate counsel failed to raise his prosecutorial misconduct claim on direct appeal.  Because the court concludes, as previously discussed, that Scott's allegations of ineffective assistance of counsel are wholly without merit, Scott has failed to demonstrate cause for his procedural default.  Scott's procedurally defaulted claim is, therefore, foreclosed from review in this § 2255 motion.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion be denied as the claims presented therein entitle the defendant to no relief.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before June 21, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of June, 2006.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE