IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | Civ. Case No. 2:03cv243-MHT |
| | ) | (WO) |
| FRED C. SCOTT | ) | |

**SUPPLEMENTAL RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On April 26, 2007, the court requested that the Eleventh Circuit Court of Appeals vacate this court's prior opinion and judgment in this case (Doc. Nos. 60 & 61) in order for the court to address two ineffective-assistance-of-appellate-counsel claims which were inadvertently omitted from the magistrate judge's June 8, 2006, Recommendation to deny Scott's motion to vacate, set, aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 51).[1]

The court will now address the following ineffective-assistance-of-appellate-counsel claims:

    (1)    Counsel failed to raise a claim that drug quantity was erroneously ascertained.

---

[1] In its June 8, 2006, Recommendation, the court indicated that counsel was appointed to represent Scott at trial.  (Doc. No. 51, p. 17.)  The docket sheet in the criminal case designates that trial counsel was appointed pursuant to the Criminal Justice Act of 1964; however, trial counsel's "motion to be relieved of duty to represent defendant on appeal" indicates that trial counsel was retained.  *U.S. v. Scott*, 2:00cr120-MHT, Doc. No. 72.  Thus, the court finds that Scott was represented by retained counsel at trial.  Nonetheless, this finding does not change the court's determination concerning the credibility of trial counsel's testimony during the May 30, 2006, evidentiary hearing.  (Doc. No. 51, p. 17.)

1

    (2)  Counsel failed to raise a claim that Scott was not a career criminal.

(Doc. No. 2, pp. 49-50.)[2]

## II. DISCUSSION

### A. Drug Quantity

Scott asserts that appellate counsel was ineffective because "[c]ounsel could have, but did not, raise the issue that drug quantity was erroneously ascertained, as objected to." (Doc. No. 2.) In their pleadings, neither the Government nor Scott indicate the specific drugs at issue or at what point in the proceedings trial counsel challenged the quantity of drugs attributed to Scott.[3] However, this court's review of the evidentiary materials indicates that trial counsel objected to the attribution of 136.8 kilograms of marijuana to Scott at sentencing. (Doc. No. 21, Gov's Ex. 2, Sentencing Transcript, R. 28, 37.) Specifically, trial counsel argued that information in the pre-sentence report indicating that Roderick Blanding ("Blanding") testified that "Scott made arrangements for the pickup of three hundred to four hundred pounds of marijuana" and that "[h]e then converts it to a hundred and thirty-six point eight kilograms in the hospital parking lot" is a mis-characterization of Blanding's testimony.

---

[2] These claims are listed as Claims 4 and 6 on pages 49 and 50 of Scott's Memorandum in Support of his § 2255 motion. (Doc. No. 2.)

[3] In their response, the Government cites to *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny for the general ineffective-assistance-of-counsel standard and refers the court to appellate counsel's affidavit as support for their argument that Scott's claim is without merit. However, in her affidavit, appellate counsel merely states "[t]here was overwhelming evidence in the record regarding quantity" and "[t]he trial court properly determined drug quantity." (Doc. No. 21, Gov's Ex. 5, p. 2.) The Government's analysis, which consists of merely reciting general law and referring the court to appellate counsel's conclusory allegation that the evidence regarding drug quantity was overwhelming, is insufficient. Nevertheless, it is clear that Scott is entitled to no relief with respect to this non-meritorious claim.

After reading parts of Blanding's testimony to the district court, trial counsel argued as follows:

> . . . What I'm saying is, when I read that over again, I see that what happened was they went to the hospital room, according to this testimony, and a prayer occurred. At some point Mr. Scott makes a telephone call, but there is no testimony as to who he called or what was said. It could have been a telephone call to a friend or relative, some entirely innocent thing. There is simply no characterization of that telephone call in the testimony.
>
> Then at some point, Riley independently of Mr. Scott, tells Mr. Blanding and Ms. Washington to go downstairs and make this pickup . . . [i]n the hospital parking lot.
>
> There is no indication in this testimony that Mr. Scott directed anything, or participated in anything other than a kind of meeting with friends and family in the hospital.

(*Id.*, R. 40.) In addition, trial counsel argued that "there is nothing to indicate that the marijuana they picked up on that particular occasion did not come from some other source that he may have had in Mexico or elsewhere." (*Id.*, R. 48.)

After hearing arguments from defense counsel and the prosecution, the court determined as follows:

> I do think [Scott] was a cooperating individual, and I do find that the drugs in the parking lot were part of the conspiracy found by the jury. I'd have to close my eyes to that fact.
>
> The conspiracy, as I said before, began back at the Oakdale meeting. Mr. Scott, Mr. Riley and Mr. Blanding were both at the hospital at that time. A call was made about drugs being delivered. Subsequent events occurred in which Mr. Blanding specifically went to Mr. Scott and picked up drugs of essentially the same amount.

3

> I think the circumstantial evidence is overwhelming that this was purely part of the conspiracy. The drugs in the parking lot was in furtherance of the conspiracy. They were foreseeable for Mr. Scott. He is, as I said, part of that conspiracy. So that objection is overruled.

(*Id.*, R. 49.) In light of trial counsel's objection, this court construes Scott's contention as a claim that appellate counsel was ineffective for failing to assert that the amount of marijuana should have been discounted because there was no direct evidence that Scott arranged for the delivery of 136.8 kilograms of marijuana in a hospital parking lot.

As previously discussed in the June 8, 2006, Recommendation, a movant must satisfy both prongs of the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance of counsel. The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.,* 466 U.S. at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id.*, 466 at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id.* at 687.

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *See Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *U.S. v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance").

5

Scott's claim that the court incorrectly attributed the 136.8 kilograms of marijuana to him is clearly without merit.  At sentencing, the Government must establish drug quantity by a preponderance of the evidence.  *U.S. v. Mertilus*, 111 F.3d 870, 873 (11th Cir. 1997). The Guidelines require a sentencing court "'to attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's offense of conviction was a part." *Id.*, *quoting U.S. v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). This court has reviewed the record and concludes that there is overwhelming circumstantial evidence indicating that the marijuana exchanged in the hospital parking lot was attributable to Scott.

Moreover, the evidentiary materials indicate that, even if the court were to discount the amount of marijuana at issue, the reduction would have no effect on Scott's sentence. In this case, the jury found Scott guilty of conspiring to possess with intent to distribute 1200 kilograms of marijuana and 4 kilograms of cocaine hydrochloride.  The Guidelines provide that, when an offense involves more than one drug type, each of the drugs is converted to its marijuana equivalent. U.S.S.G. § 2D1.1, comment (n. 10).  Four kilograms of cocaine convert to an equivalent of 800 kilograms of marijuana.  U.S.S.G. Section 2D1.1 Drug Equivalency Tables, Cocaine and Other Schedule I and II Stimulants.  When combined with the 1200 kilograms of marijuana found by the jury less the 136.8 kilograms of marijuana at issue, Scott would be held accountable for an equivalent of 1863.2 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(4), offenses involving 1000 to 3000 kilograms of marijuana are assigned a base offense level of 32.  At sentencing, the computation of Scott's base

6

offense level was 32. Consequently, Scott has failed to show that appellate counsel's failure to raise this non-meritorious claim on direct appeal prejudiced his case. *See Strickland*, *supra*.

### B.  Career Criminal

In his memorandum in support of his § 2255 motion, Scott asserts that "[appellate] counsel could have, but did not raise the claim that Scott was not a career criminal." (Doc. No. 2.) Scott, however, fails to provide any facts or analysis with respect to this claim. (*Id.*) In addition, the court notes that neither the Government in its response nor appellate counsel in her affidavit addresses Scott's contention concerning his status as a career criminal.[4] Scott also did not discuss this specific ineffective-assistance-of-appellate-counsel claim in his reply to the Government's response. (Doc. No. 24, pp. 21-22.) In other words, the pleadings with respect to this ineffective-assistance-of-appellate-counsel claim are not a model of clarity.

Nonetheless, the transcript indicates that, during a discussion concerning whether Scott was ineligible for career offender status under U.S.S.G. § 4B1.1 due to his prior convictions occurring over fifteen years ago, trial counsel objected to the court's finding that the conspiracy commenced in 1991. Trial counsel argued that Cook's testimony indicating that the conspiracy began in 1991 when Scott and Calvin Cook met in prison and began

---

[4] Although the Government identifies Scott's contention in its list of ineffective-assistance-of-appellate counsel claims and states that appellate counsel addressed this allegation in her affidavit, it is clear from the evidentiary materials that appellate counsel did not discuss this claim at any point in her affidavit. (Doc. No. 20, pp. 16-17; Gov's Ex. 5.) Thus, the Government's argument is insufficient as a matter of law. Despite this deficiency, the court concludes that Scott has failed to demonstrate that counsel was ineffective for failing to challenge his career offender status on appeal.

discussing ways to make money was not credible and that evidence established that the conspiracy began "if at all, . . . at some point in 1995 when they got together at . . . Mr. Scott's house for a social event." (Sentencing Transcript in 2:00cr120-MHT, R. 33.) Thus, the court construes Scott's contention as a claim that appellate counsel was ineffective for failing to assert that the district court erred in classifying him as a career offender because the sentences for his 1979 and 1989 drug convictions were imposed more than fifteen years before commencement of the instant conspiracy offense.

The Guidelines provide that a "defendant is a career offender if . . . the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense . . . and . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. A prior conviction is only eligible to count toward career-offender status if the prior conviction "was imposed within fifteen years of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e).

At sentencing, trial counsel argued that any testimony concerning Scott's and Cook's discussions while imprisoned fails to establish that the instant conspiracy commenced in 1991 because "it probably is relatively common for people in prison to discuss these sorts of things without any real intention or firm planning to do anything when they get out." In response to this argument, the Government identified specific parts of Cook's trial testimony, indicating that, at some point in 1991, Cook and Scott discussed what they planned to do upon their release from Oakdale Correctional Facility. (Sentencing Transcript, R. 34.) For example, the prosecutor read Cook's statement that "one of the ways of making money was

8

we were going to try to get together . . . Scott had a connection for some marijuana and try to sell it." (*Id.*) Although defense counsel argued that Cook's testimony was uncorroborated and "should not be deemed as particularly credible testimony," the district court determined as follows:

> The Court finds, as I stated earlier, that the testimony of Mr. Cook is credible. This conspiracy began at Oakdale when they made actually quite detailed plans about what there were going to do once they got out. Indeed, they further carried out those plans. There was a conspiracy between Cook and Mr. Scott at that Oakdale meeting.
>
> So the objection on the career offender matter is overruled.

(Sentencing Transcript, R. 36.) Under the Guidelines, credibility determinations are squarely within the province of the district court's role as finder of fact. *See U.S. v. Pressley*, 345 F.3d 1205, 1216 (11th Cir. 2003). In this case, the district court's finding that Clay's testimony indicating that the conspiracy commenced in 1991 is supported by the evidence. Thus, it is clear that Scott's 1979 and 1989 convictions occurred within fifteen years of the commencement of the instant conspiracy. Consequently, Scott has failed to demonstrate that appellate counsel's failure to challenge his status as a career offender on direct appeal fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

### III. CONCLUSION

Accordingly, based on the conclusions reached in the Recommendation entered on June 8, 2006, and the conclusions contained in this Supplemental Recommendation, it is the

9

RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion be denied.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before June 11, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of May, 2007.

                                                  /s/Charles S. Coody
                                                CHARLES S. COODY
                                                CHIEF UNITED STATES MAGISTRATE JUDGE